**Nidel & Nace, PLLC**
**Jonathan B. Nace, Esq.**
**One Church Street**
**Suite 802**
**Rockville, MD 20850**
**Tel: 202-780-5153**
**jon@nidellaw.com**

# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF CALIFORNIA

*In Re: Roundup Products Liability Litigation*

MDL No. 2741

Case No. 16-md-02741-VC

This document relates to:

*Coffman v. Monsanto Co., et al.*
Case No.: 3:21-cv-02505-VC

---

SUE COFFMAN, as Personal Representative
of the ESTATE OF KEVIN COFFMAN,
Deceased,

     Case No.: 3:21-cv-02505-VC

    Plaintiff,

v.

MONSANTO COMPANY, THE VALLEY
FERTILIZER AND CHEMICAL COMPANY,
and COSTCO WHOLESALE
CORPORATION,

    Defendants.

## MOTION TO REMAND

  ***COMES NOW*** Plaintiff, by and through undersigned counsel, and pursuant to 28 U.S.C. §1447(c) moves for remand of this action to the Circuit Court for the City of Richmond, and states the following:

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a products liability action involving the sale of Monsanto's product Roundup®, which contains the ingredient glyphosate that has been deemed a probable human carcinogen. Kevin Coffman purchased and used Roundup®, manufactured and distributed by Monsanto, and glyphosate products sold to him by The Valley Fertilizer and Chemical Company and Costco Wholesale Corporation, developed Non-Hodgkin's Lymphoma and passed away as a direct and proximate result of glyphosate-caused Non-Hodgkin's Lymphoma on December 11, 2019. *See* Doc. 1-2 ¶ 4.[1] Plaintiff pled that The Valley Fertilizer and Chemical Company "specifically sold Roundup® to the decedent to Kevin Coffman on numerous occasions…". *Id.* ¶ 12. A copy of one exemplary receipt identifying such was attached to Plaintiff's Complaint. *Id.* (citing Original Ex. 2 to Original Complaint).

Contrary to the argumentative Notice of Removal, glyphosate's known carcinogenicity was not established when "Tom Rea, President and General Manager of Valley Fertilizer, learned from news reports in the late summer/fall of 2018 about large verdicts" regarding Roundup®. Doc. 1, p. 9. Instead, the EPA had classified glyphosate as "possibly carcinogenic to humans" in 1985. Doc. 1-2 ¶ 40. In March 2015, the International Agency for Research on Cancer (IARC), the specialized cancer research agency of the World Health Organization (WHO) reassessed glyphosate and found glyphosate was "probably carcinogenic in humans." *Id.* ¶ 58. Other peer-reviewed literature since at least as early as 1991 found evidence of carcinogenicity by glyphosate and glyphosate containing products such as Roundup®. *Id* ¶¶ 73-79. Throughout this time, from 1991 until 2015 when IARC published its findings, Defendants and reasonable sellers of glyphosate products, including Valley, knew or had reason to know that glyphosate was a human carcinogen. Mr. Coffman purchased

---

[1] Citations to docket entries are to Ms. Coffman's individual case, Case No. 3:21-cv-02505-VC.

glyphosate products from Valley, but Valley never warned Mr. Coffman about the dangers of glyphosate.

On January 12, 2021, Valley filed a Demurrer arguing that "The Complaint Fails to State A Cause of Action Against Valley for Negligent Failure to Warn Nor [sic] Breach of Implied Warranty." Ex. 1, p. 2.  The gravamen of the argument is that Valley did not and could not have been alleged to have knowledge of any defects in glyphosate.  More than thirty days past before any Notice of Removal was filed.  On February 22, 2021, Valley filed a Memorandum in support of Its Motion to Transfer Venue, seeking to transfer the matter out of the City of Richmond, VA.  Ex. 2.  Plaintiff's opposition was not yet due under Virginia Rules of Procedure at the time Monsanto removed the action.

On March 17, 2021, Monsanto filed a Notice of Removal entirely contingent upon a finding that Valley was "fraudulently joined." Doc. 1.  Monsanto alleges that Plaintiff engaged in "tactical maneuvering," by filing suit against a reseller in Virginia which sold Roundup® to the decedent for decades without disclosing these defects of which it had reason to know.  Further, Monsanto explicitly alleges that despite the pending Demurrer filed on January 12, 2021, it could not have known of this defense until it received answers to interrogatories from Valley.  Doc. 1 ¶ 23.

Another reseller was also named as co-Defendant and is represented by the same counsel as Monsanto: Costco Wholesale.  Costco is diverse from Plaintiff and consented to the Notice of Removal.

After Monsanto filed its Notice of Removal to the Eastern District of Virginia, the case was promptly transferred to the Joint Panel on Multidistrict Litigation, and subsequently to this Honorable Court for consolidation on March 19, 2021 as part of Conditional Transfer Order 262.  This Motion to Remand is filed less than thirty-days after Monsanto's Notice of Removal.

## II.     LEGAL STANDARD

In the Fourth Circuit, in which this case was pending at the time of removal, the legal standard for fraudulent joinder is demanding.

> [i]n order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either:
>
>> '[T]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or
>>
>> [T]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.
>
> The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.  A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.

*Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993) (quoting *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981)) (citing *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992); 14A Charles A. Wright et al., *Federal Practice Procedure* § 3723, at 353-54 (1985)) (emphasis in original).

The Ninth Circuit imposes substantively the same demanding standard:

> There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Fraudulent joinder is established the second way if a defendant shows that an "individual[ ] joined in the action cannot be liable on any theory." But "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a "heavy burden" since there is a "general presumption against [finding] fraudulent joinder."

*Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Philip Morris USA* , 582 F.3d 1039, 1044, 146 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. RR. Co.*, 385 F.3d 568, 573 (5th Cir. 2004); *Tillman v. R.J. Reynolds Tobacco* , 340 F.3d 1277, 1279 (11th Cir. 2003) (*per curiam*)) (emphasis added in *Grancare*)); *Ritchey v. Upjohn Drug Co.* , 139 F.3d 1313, 1318 (9th Cir. 1998))).  Therefore, there

is no conflict and Monsanto must demonstrate "actual fraud" or "outright fraud" in the pleadings, or that there is "no possibility" that the complaint states a cause of action against the non-diverse Defendant.

### III. ARGUMENT

#### A. Monsanto's Notice of Removal is Untimely

Monsanto selects the date of Valley's answers to interrogatories as a "trigger" for their constructive knowledge that Valley was fraudulently joined. Even assuming a claim cannot be stated against Valley, Monsanto was on notice by no later than January 13, 2021 that Valley was not properly joined because of the filed Demurrer. Ex. 1.

The removal statute upon which Monsanto relies for its "other paper" argument is unequivocal that it is the *first* paper that provides potential knowledge of fraudulent joinder that triggers the thirty-day deadline.

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or ***other paper from which it may first be ascertained*** that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3) (emphasis added). As Monsanto has attempted previously, it ignores the first paper from which it may have first been ascertained this alleged fraudulent joinder and focuses on the most recent paper to support its argument, suggesting an ongoing right of removal with each new fact learned through discovery. *See Abreu v. Monsanto (In re Roundup Prods. Liab. Litig.)*, 396 F. Supp. 3d 893, 897 (N.D. Cal. 2019) ("For fraudulent joinder, Monsanto presumably knew at the outset that Wilbur Ellis Feed was not a proper defendant for any of the plaintiffs, and it presumably knew at or near the outset that Wilbur Ellis Company was not a proper defendant for some plaintiffs."). This repeated attempt to extend the time frame for removing cases pursuant to a shaky fraudulent joinder argument remains inapposite with the statute and, thus, the Court's subject matter jurisdiction.

In the Fourth Circuit, *Brittain v. Pac. Cycle, Inc.*, 2018 U.S. Dist. LEXIS 210770; 2018 WL 6584482 (W.D.N.C. Dec. 14, 2018) is on point. A removing Defendant argued that though a motion to dismiss was filed, it did not learn of the necessary facts to support a theory of fraudulent joinder until after responses to discovery were answered. 2018 U.S. Dist. LEXIS 210770 at *8 ("[Defendant] claims that this case became removable on August 16, 2017 as soon as it received Defendant Wright's answers to Pacific Cycle's Request for Admission, (Doc. No. 1-7)—the 'other paper' which made it clear that removal was proper under 28 U.S.C. § 1446(b)(3). (Doc. No. 1 ¶ 13). And Pacific Cycle contends that, under the 'other paper' rule, it had thirty days after it received Defendant Wright's answers to remove this Case."). The district court easily dismissed this contention because a motion to dismiss had been filed earlier.

> Pacific Cycle was required to remove the case within thirty days from when Wright's Motion to Dismiss and Answer was filed. Instead, for reasons unclear to this Court, Pacific Cycle delayed removing the case until nearly three months after it was put on notice that Wright might have been fraudulently joined. Accordingly, despite the potential merits of Pacific Cycle's fraudulent joinder claim, the Court cannot reward Pacific Cycle's litigation lethargy.

*Id.* at *15. Similarly, here, even if the Complaint itself did not indicate fraudulent joinder, the Demurrer put Monsanto on notice as to a potential basis for claiming fraudulent joinder. Nothing prevented Monsanto from inquiring of Valley earlier as to this claim and noticing a removal by February 11, 2021. Monsanto simply failed to act timely.

### B. Valley is Properly Joined

Monsanto's fraudulent joinder theory does not establish diversity jurisdiction, and remand is proper because Plaintiff has a viable claim against Valley. Virginia product liability law does not limit Valley's liability to that which it actual knew. Instead, Valley is liable for negligently failing to warn that which it actually knew ***or*** which it has "reason to know." *See e.g.*, *Funkhouser v. Ford Motor Co.*, 285 Va. 272 (Va. 2013).

> (1) The words "reason to know" are used throughout the Restatement [(Second) of Torts] . . . to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

*Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 135 (Va. 1992).[2] The allegations in the Complaint, namely the publishing by IARC and other peer-reviewed literature that glyphosate was a probable and/or possible human carcinogen, gave Valley "reason to know" that these products were dangerous for their intended use. Based upon these publications that are recited throughout the Complaint, Valley failed to warn about the dangers of its products, which Mr. Coffman purchased, and which ultimately caused his demise. The allegations of the Complaint are that the WHO and other publicly available literature was advancing that Roundup® was possibly carcinogenic for decades beginning in 1985 giving Valley, and the other Defendants, actual knowledge or a reason to know of its dangers which should have caused Valley to warn of Roundup®'s defects.

Monsanto's attempt to demonstrate there is "no possibility" of a claim against Valley wholly fails to address the possibility of a claim based on a "reason to know." Even accepting Valley's specific answers as unimpeachable, they do not defeat the mere "possibility of a right to relief" against it. *Supra*, *Marshall* at 232-33. Because its Notice or Removal was filed late, *supra*, Monsanto is forced to argue that the critical facts were first uncovered in Valley's answers to discovery:

> The first time that Valley Fertilizer became aware that anyone had even alleged the possibility that the risk of cancer may be increased by exposure to glyphosate, Roundup®-branded herbicides, or any other glyphosate based herbicides was when Tom Rea, President and General Manager of Valley Fertilizer, learned from news reports in the late summer/fall of 2018 about large verdicts issued by California juries against Monsanto Company in lawsuits by plaintiffs alleging that their cancers were caused by Roundup®-branded herbicides.

---

[2] Monsanto asserts the same two-prong standard, either of which can support liability. *See* Doc. 1 ¶ 17 (arguing Plaintiff "has the burden of proving…that, when Valley Fertilizer sold the Roundup®-branded herbicides that allegedly caused Mr. Coffman's cancer, Valley Fertilizer knew or had reason to know that those products were dangerous for their intended use.").

Doc 1, pp. 8-9, ¶ 17.  Assuming, *arguendo*, that Mr. Rea's answers are correct—and that Mr. Rea's knowledge is the extent of Valley's knowledge, which it is not—then all Valley has asserted is that it did not have *actual knowledge* before such verdicts.  This answer does not suffice to defeat a claim that Valley had a "reason to know."

Further, Valley's answers to interrogatories are not unimpeachable; instead, the "reason to know" a fact can be shown in the face of conflicting testimony by various means.  It is more than a "mere possibility" that other discovery will confirm Valley had reason to know or even *actually knew* of the dangers of Roundup®.  Valley Fertilizer and Chemical Company is not a generic supermarket or "general store," but a "licensed pesticide application business in Virginia and West Virginia."  Ex. 3; https://www.valleyfertilizer.net/index.html (last reviewed April 14, 2021).  Valley holds itself out as a commercial entity which specializes in the selling of "agricultural applications" such as Roundup®.  *Id.*  The likelihood that a specialized pesticide re-seller would have actual knowledge of the effects and *alleged health effects* of the globally popular Roundup® application during the time from 1985 until 2015 when the World Health Organization and other peer reviewed literature was identifying causality between Roundup® and the development of certain cancers is more than a "mere possibility."  *Supra* (citing Doc. 1-2 ¶¶ 40, 58, 73-79).  Without a doubt, such a specialized company has a "reason to know" of the public facts which identify defects in the products it sells.[3]  Plaintiff's Complaint actually alleges more than a mere possibility, but a plausibility that Valley had reason to know or actual knowledge of the dangers of glyphosate when it sold the Roundup® to Kevin Coffman without warning of these dangers.

The irrationality of accepting this specialized pesticide seller's answers as true to find fraudulent joinder is amplified by the silence of Costco Wholesale Corporation, a co-Defendant in

---

[3] Not only is this not dispositive of Ms. Coffman's claim against Valley, certain experts may find that Valley's lack of knowledge is a basis to conclude that Valley was negligent in failing to warn.

Ms. Coffman's individual action represented by the same counsel as Monsanto therein.[4] Though it is not a specialized licensed pesticide seller, Costco has not filed a Demurrer or suggested that it lacked a "reason to know" of the dangers of Roundup® during the time frame outlined in the Complaint. If claims against a reseller—or more specifically Ms. Coffman's claim against Costco—were legally impossible in Virginia, Costco would have made the same argument. Of course, such an argument would not support removal and should have been known to Monsanto within thirty-days of being served with the Complaint, so Monsanto refrained from such a frivolous argument.[5]

Next, there is no argument that Plaintiff committed "outright fraud" in joining Valley. *Supra, Marshall*, 6 F.3d at 232-33. Monsanto asserts only that "there is no reasonable basis for predicting liability based on the claims alleged against [Valley]". Doc. 1 ¶ 15. However, Valley did, in fact, sell Roundup® products to Mr. Coffman for years prior to his death. Outright fraud could be alleged by Monsanto if sales data showed that Ms. Coffman invented that her husband purchased Roundup® from Valley, perhaps; but there is no such argument, and the facts already known show that Mr. Coffman did purchase Roundup® from Valley.[6]

Finally, Plaintiffs note the dangers of accepting as true a Defendant's answers to interrogatories *prior to the complete production of discovery* for the purpose of establishing a claim is legally impossible. Mr. Rhea may believe his statements to be true. But those statements are not the full record; and those statements belie the allegations of the Complaint. To permit removal based only on a theory of fraudulent joinder after a sliver of one-sided discovery has been uncovered would grant defendants an unbreakable sword to remove any case based on fraudulent joinder. Such a finding

---

[4] Costco consents to removal, but if claims against resellers were unavailable as a matter of law in Virginia, it should have known within thirty-days of service of the Complaint that Valley was fraudulently joined. Instead, Costco and Monsanto's joint counsel filed separate Answers for both Defendants on February 1, 2021. Exs. 4 and 5.

[5] Perhaps Costco is waiting to answer Plaintiff's interrogatories stating that it did not actually know of Roundup®'s dangers and will argue that the thirty-day deadline restarts with its own discovery responses as well.

[6] Plaintiff also purchased other glyphosate products from Valley, rendering Valley liable for certain sales Monsanto may not be.

would expand the federal district court's limited diversity jurisdiction to any matter in which *select* facts could arguably support the high bar of fraudulent joinder.

This is especially dangerous where the Defendant from whom the "other paper" was developed was also actively seeking a change of venue. Though Valley did not remove the case, Valley had a pending motion to transfer for venue out of the Circuit Court of Richmond based only on *forum non conveniens*, as the Circuit Court for Richmond was a permissible venue under Virginia Code. *See* Va. Code § 8.01-262(2); *see also* Ex. 2, p. 5 (citing "the *forum non conveniens*" statute as the legal standard for Valley's motion to transfer venue.). Therefore, Valley seeks transfer based upon the highly discretionary—and highly unlikely—argument that though Virginia permits the prosecution of this matter in the Circuit Court for Richmond, it should be transferred out of the pending Court; while at the same time Valley provides answers to interrogatories upon which its co-Defendant relies upon to argue venue must be in federal court. Fraudulent joinder should not so easily promote collusive acts by co-Defendants with similar goals in mind.

## IV. CONCLUSION

Monsanto's Notice of Removal is based entirely on a theory of fraudulent joinder. The Notice of Removal is late, having been filed more than thirty-days after Valley filed its Demurrer. Further, the Notice of Removal does not establish as a matter of law that there is no possibility of right to relief against Valley by ignoring the "reason to know standard" applicable to Ms. Coffman's claim.

Plaintiff Sue Coffman respectfully moves for remand to the Circuit Court for the City of Richmond, Virginia. Ms. Coffman further moves for an Order granting her ten-days after remand to move for attorneys' fees pursuant to 28 U.S.C. § 1447(c).

Respectfully submitted,

/s/ Jonathan B. Nace
Jonathan B. Nace, Esq.
DC Bar Number 985718
Nidel & Nace, PLLC
One Church Street
Suite 802
Rockville, MD 20850
Tel: 202-780-5153
jon@nidellaw.com

## CERTIFICATE OF SERVICE

This is to certify that on April 16, 2021, I caused a copy of the foregoing *Motion to Remand* to be served upon the Court and all parties via ECF. A courtesy copy was sent to counsel of record via email service.

/s/ Jonathan B. Nace
Jonathan B. Nace, Esq.