**WILKINSON STEKLOFF LLP**
Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax: 202-847-4005

**HOLLINGSWORTH**LLP
Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com)
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5800
Fax: 202-682-1639

*Attorneys for Defendant*
*MONSANTO COMPANY*

**ARNOLD & PORTER KAYE SCHOLER LLP**
William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax: 202-942-5999

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 2741<br><br>Case No. 3:16-md-02741-VC |
| THIS DOCUMENT RELATES TO:<br><br>*Sue Coffman, as Personal Representative of the Estate of Kevin Coffman, Deceased v. Monsanto Company, et al.*, Case No. 3:21-cv-02505-VC | ) ) ) ) ) ) ) ) ) ) | **DEFENDANT MONSANTO COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND *COFFMAN* CASE** |

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND ISSUES TO BE DECIDED ................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................ 1

LEGAL STANDARDS ............................................................................................................... 2

ARGUMENT ............................................................................................................................... 4

    I.   Monsanto Presented Evidence That Clearly Establishes Fraudulent Joinder, And Plaintiff's Unsupported Speculation And Allegations Fail To Rebut Monsanto's Evidence-Based Showing. ................................................................................................ 4

    II.  The Notice Of Removal Was Timely Based On Section 1446(b) Because The Valley Fertilizer Interrogatory Responses Were The "Other Paper" That First Made This Lawsuit Removable. ........................................................................................................ 10

CONCLUSION ......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Federal Court Cases**                                                    **Page(s)**

*Arias v. Follet Higher Educ. Corp.*,
    No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192 (C.D. Cal. Feb. 7, 2019) .................... 3, 9-10

*Barakat v. Costco Wholesale Corp.*,
    No. 20-cv-02248-JCS, 2020 WL 3635933 (N.D. Cal. July 6, 2020)..........................10, 12, 14

*Brittain v. Pac. Cycle, Inc.*,
    No. 5:17-cv-00148-RJC-DCK, 2018 WL 6584482 (W.D.N.C. Dec. 14, 2018)...............13, 14

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) .......................................................................4, 10, 11

*Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co.*,
    844 F.3d 1133 (9th Cir. 2017) ...........................................................................13, 14

*Durham v. Lockheed Martin Corp.*,
    445 F.3d 1247 (9th Cir. 2006) ...........................................................................11, 13

*Feizbakhsh v. Travelers Com. Ins. Co.*,
    No. LA CV16-02165 JAK (Ex), 2016 WL 8732296 (C.D. Cal. Sept. 9, 2016) ...............3, 10

*Grancare, LLC v. Thrower*,
    889 F.3d 543 (9th Cir. 2018) ..................................................................................3

*Harris v. Bankers Life & Cas. Co.*,
    425 F.3d 689 (9th Cir. 2005) .................................................................................13

*Highwire Promotions, LLC v. Legends Mktg., LLC*,
    No. CV 05-5425 ABC, 2005 WL 8156562 (C.D. Cal. Oct. 31, 2005)...................................12

*Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*,
    No. CV 14-07502 DDP, 2015 WL 1636715 (C.D. Cal. Apr. 10, 2015) ...................................4

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005)..................................................................................................15

*Martinez v. McKesson Corp.*,
    No. 3:15-cv-02903-H-JLB, 2016 WL 5930271 (S.D. Cal. Apr. 7, 2016) ..........................3, 10

*Mattel, Inc. v. Bryant*,
    441 F. Supp. 2d 1081 (C.D. Cal. 2005), *aff'd on other grounds*, 446 F.3d 1011
    (9th Cir. 2006)...........................................................................................................12

*Morris v. Princess Cruises, Inc.*,
    236 F.3d 1061 (9th Cir. 2001) ..................................................................................3

*Ritchey v. Upjohn Drug Co.*,
    139 F.3d 1313 (9th Cir. 1998) ..................................................................................3

*In re Roundup Prods. Liab. Litig. (Abreu, et al.),*
    396 F. Supp. 3d 893 (N.D. Cal. 2019) ...................................................................................14

*In re Roundup Prods. Liab. Litig. (Cichy),*
    MDL No. 2741, 2019 WL 6122004 (N.D. Cal. Nov. 19, 2019)...............................................3

*Torkie-Tork v. Wyeth,*
    757 F. Supp. 2d 567 (E.D. Va. 2010) .......................................................................................5

*Vu v. Ortho-McNeil Pharm., Inc.,*
    602 F. Supp. 2d 1151 (N.D. Cal. 2009) ...............................................................................4, 10

*White v. Raley's,*
    No. 3:20-cv-00457-MMD-WGC, 2020 WL 8474573 (D. Nev. Oct. 19, 2020).....................14

**State Court Cases**

*Featherall v. Firestone Tire & Rubber Co.,*
    252 S.E.2d 358 (Va. 1979) .......................................................................................................5

*Funkhouser v. Ford Motor Co.,*
    736 S.E.2d 309 (Va. 2013)................................................................................................5, 8, 9

*Owens-Corning Fiberglas Corp. v. Watson,*
    413 S.E.2d 630 (Va. 1992)...............................................................................................5, 6, 8, 9

**Statutes**

28 U.S.C. § 1441(b) ......................................................................................................................2

28 U.S.C § 1446(b) ............................................................................................................. *passim*

## INTRODUCTION AND ISSUES TO BE DECIDED

In its Notice of Removal, ECF No. 1, Monsanto Company ("Monsanto") pierced the pleadings by presenting evidence – sworn interrogatory responses served by defendant The Valley Fertilizer and Chemical Company ("Valley Fertilizer") – that clearly establishes that Plaintiff Sue Coffman fraudulently joined Valley Fertilizer in an effort to deprive Monsanto of its important right to remove this case to federal court.  The Motion to Remand ("Remand Motion"), ECF No. 6, filed by Plaintiff does not present any evidence to rebut Monsanto's evidence-based, fraudulent joinder showing, and her unsupported speculation and allegations about her claims against Valley Fertilizer fail to provide any persuasive basis for this Court to order remand.

Plaintiff apparently recognizes that she has no persuasive response to Monsanto's fraudulent joinder showing, so she argues that the Notice of Removal was untimely, but that argument also lacks merit.  Pursuant to 28 U.S.C § 1446(b), this removal was timely because the Complaint named Valley Fertilizer – a Virginia defendant that precluded removal – and this case first became removable when Valley Fertilizer served the interrogatory responses upon which Monsanto based its evidence-based fraudulent joinder arguments.  Those interrogatory responses were the Section 1446(b) "other paper" that made this case removable, and Monsanto timely filed the Notice of Removal within thirty days of the date when Valley Fertilizer served them.

The issues to be decided are whether, in these circumstances: (1) Valley Fertilizer has been fraudulently joined; and (2) Monsanto timely removed this case.  As discussed in more detail below, the answers to both questions are "Yes."

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In September 2020, Plaintiff commenced this lawsuit by filing a complaint in a Virginia court.  She asserts claims against Monsanto based on the allegation that Roundup®-branded herbicides caused her husband Kevin Coffman's non-Hodgkin's lymphoma ("NHL") and death. *See, e.g.*, Compl. ¶¶ 4, 124-38 (attached to Notice of Removal as Ex. 2), ECF No. 1-2.[1]

---

[1] Although the Complaint sometimes alleges that "Plaintiff" was exposed to Roundup®-branded herbicides and developed NHL, *see, e.g.*, Compl. ¶¶ 172, 184, 188, that appears to be careless drafting.  The caption and other allegations, *see, e.g.*, *id.* ¶¶ 170, 189-92, show that Plaintiff is

Plaintiff also asserts claims against Valley Fertilizer and Costco Wholesale Corporation ("Costco").  Mr. Coffman allegedly purchased Roundup®-branded herbicides at a Valley Fertilizer store and a Costco store.  Compl. ¶ 3.  By asserting claims against Valley Fertilizer (a Virginia citizen for purposes of diversity jurisdiction, *id*. ¶ 11), Plaintiff tried to prevent removal due to lack of diversity of citizenship and the forum defendant rule, 28 U.S.C. § 1441(b).[2]

In January 2021, Valley Fertilizer sought dismissal by filing a demurrer.  Valley Fertilizer Demurrer ("Demurrer") (attached to Remand Motion as Ex. 1), ECF No. 6-1.  The Demurrer was based solely on conclusory, unsworn arguments by counsel and did not present any evidence.

On February 15, 2021, Valley Fertilizer responded to Plaintiff's interrogatories by serving responses that were signed by its attorney but were not sworn under oath by Valley Fertilizer.  Notice of Removal ¶ 23.  On February 26, 2021, Valley Fertilizer served the same responses, signed under penalty of perjury by its President/General Manager.  Valley Fertilizer Interrogatory Responses (attached to Notice of Removal as Ex. 3), ECF No. 1-3.[3]

On March 17, 2021, within thirty days of the service dates of the Valley Fertilizer Interrogatory Responses (both the unsworn and sworn responses), Monsanto timely filed the Notice of Removal.  That removal occurred before Plaintiff responded to, and before a hearing was held on, the Demurrer.

After this case was transferred to this Court, Plaintiff filed the Remand Motion.  She does not dispute that complete diversity of citizenship exists here if the Court disregards Valley Fertilizer's citizenship.  She also does not dispute that this case satisfies the jurisdictional amount-in-controversy requirement for diversity-based subject matter jurisdiction.

## LEGAL STANDARDS

As the Ninth Circuit has held, a defendant can remove a case to federal court even in the

---

not pursuing claims for her own injuries but is acting in her representative capacity for Mr. Coffman's estate.

[2] Costco is deemed to be a citizen of the State of Washington for purposes of federal diversity jurisdiction.  *See* Compl. ¶ 13.  Plaintiff admits that Costco does not destroy diversity of citizenship and that Costco consented to this removal.  *See* Remand Motion at 3.

[3] The Valley Fertilizer Interrogatory Responses cited herein (and attached to the Notice of Removal) are the sworn responses that Valley Fertilizer served on February 26.

absence of complete diversity of citizenship.  "[O]ne exception to the requirement of complete diversity is where a non-diverse defendant has been 'fraudulently joined.'"  *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  A defendant removing a case from state court based on a fraudulent joinder argument is required to show that there is no possibility that the state court would hold the non-diverse co-defendant liable.  *Grancare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018).  When fraudulent joinder applies – *i.e.*, when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state," *Morris*, 236 F.3d at 1067 (quotation marks omitted) – the fraudulently joined defendant's "presence in the lawsuit is ignored" for purposes of determining whether the court has jurisdiction based on diversity of citizenship, *id*.[4]

When conducting a fraudulent joinder analysis, a court is not limited to the allegations in the complaint and is permitted to consider declarations and other evidence presented by the removing defendant.  *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *Morris*, 236 F.3d at 1068 (stating that "[f]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence" (quoting *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995))).  If a removing defendant pierces the pleadings by presenting evidence showing that a non-diverse co-defendant has been fraudulently joined, the plaintiff cannot rely on allegations in the complaint to seek remand.  *See Arias v. Follet Higher Educ. Corp.,* No. 8:18-cv-01965-JLS-JDE, 2019 WL 484192, at *3 (C.D. Cal. Feb. 7, 2019); *Feizbakhsh v. Travelers Com. Ins. Co.*, No. LA CV16-02165 JAK (Ex), 2016 WL 8732296, at *8 (C.D. Cal. Sept. 9, 2016); *Martinez v. McKesson Corp.*, No. 3:15-cv-02903-H-JLB, 2016 WL 5930271, at *3 (S.D. Cal. Apr. 7, 2016).  If a plaintiff argues that it is possible for her to state a claim against the non-diverse defendant, that possibility must be "non-fanciful" for

---

[4] The Remand Motion repeatedly cites Fourth Circuit law regarding the federal issues presented by the Remand Motion – whether the Notice of Removal properly invoked federal diversity jurisdiction by presenting fraudulent joinder arguments.  However, as this Court held when deciding a remand motion in another Roundup® lawsuit, Ninth Circuit precedent – not the transferor circuit's law – is binding on issues of federal law presented in remand motions submitted to this Court.  *See In re Roundup Prods. Liab. Litig. (Cichy)*, MDL No. 2741, 2019 WL 6122004, at *1 (N.D. Cal. Nov. 19, 2019).

the case to be remanded.  *Illegal Aliens, LLC v. N. Am. Specialty Ins. Co.*, No. CV 14-07502

DDP (ASx), 2015 WL 1636715, at *2 (C.D. Cal. Apr. 10, 2015); *Vu v. Ortho-McNeil Pharm.,*

*Inc.*, 602 F. Supp. 2d 1151, 1154 (N.D. Cal. 2009).

 The timeliness of a removal notice is governed by 28 U.S.C. § 1446(b), which "identifies

two thirty-day periods for removing a case."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d

876, 885 (9th Cir. 2010).  "The first thirty-day removal period is triggered if the case stated by

the initial pleading is removable on its face."  *Id.* (quotation marks omitted).  If the complaint

"on its face" does not provide a basis for removal, a removal opportunity can arise later – for

example, when the removing defendant receives an "other paper" from which removability may

first be ascertained.  *Id.* (quoting § 1446(b)).

## ARGUMENT

**I.** **Monsanto Presented Evidence That Clearly Establishes Fraudulent Joinder, And Plaintiff's Unsupported Speculation And Allegations Fail To Rebut Monsanto's Evidence-Based Showing.**

 Virginia law and the evidence presented in the Notice of Removal – sworn interrogatory

responses served by Valley Fertilizer – establish that Plaintiff fraudulently joined Valley

Fertilizer.  Plaintiff does not present any evidence to rebut Monsanto's evidence-based showing,

and her unsupported speculation and allegations regarding her negligent-failure-to-warn claim

against Valley Fertilizer do not require remand.[5]

---

[5] The Complaint asserts various claims against Valley Fertilizer in addition to the negligent-failure-to-warn claim, but the Remand Motion does not address any of those other claims.  For example, Plaintiff asserts strict liability claims against Valley Fertilizer.  Compl. Count I & Count II.  But, as shown in the Notice of Removal, Virginia law does not recognize strict liability claims in products liability cases.  Notice of Removal ¶ 15.  The Remand Motion does not contend otherwise.  Moreover, Count III (negligence claim) asserts various theories of liability against Valley Fertilizer – not limited to negligent failure to warn – by using the word "Defendants" and alleging that Defendants breached their duties to Plaintiff and were negligent by, for example, developing, designing, testing, manufacturing, distributing, labeling, or packaging Roundup®-branded herbicides.  Based on the Valley Fertilizer Interrogatory Responses, the Notice of Removal established that those liability theories are not viable as to Valley Fertilizer because it "'has never developed, designed, tested, manufactured, distributed, labeled, or packaged Roundup®-branded herbicides'" and "'has never had any involvement with or control over any of those activities.'"  *Id.* ¶ 16 (quoting Valley Fertilizer Interrogatory Responses).  Plaintiff does not dispute this showing or otherwise contend that she has a viable basis to hold Valley Fertilizer liable on any negligence theory other than a failure-to-warn theory.  Count IV asserts a claim for breach of implied warranties.  However, the Notice of Removal established, based on the Valley Fertilizer Interrogatory Responses, that Plaintiff does

Plaintiff does not have a viable negligent-failure-to-warn claim against Valley Fertilizer. To prevail on that claim under Virginia law, she has the burden of proving (among other elements) that, when Valley Fertilizer sold the Roundup®-branded herbicides that allegedly caused Mr. Coffman's cancer, Valley Fertilizer knew or had reason to know that those products were dangerous for their intended use. *See Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E.2d 630, 634 (Va. 1992) (citing *Featherall v. Firestone Tire & Rubber Co.*, 252 S.E.2d 358, 366 (Va. 1979)); *Funkhouser v. Ford Motor Co.*, 736 S.E.2d 309, 313 (Va. 2013) (quoting *Owens-Corning*, 413 S.E.2d at 634).  As the Virginia Supreme Court stated, the appropriate standard is whether the defendant had "reason to know," not whether it "should have known," of the alleged danger, *Owens-Corning*, 413 S.E.2d at 635, and "[t]here is a significant legal difference between [those] phrases," *id*. at 634.  The "reason to know" standard is more favorable for a defendant and imposes a more demanding burden on a plaintiff than the "should know" standard.  The "reason to know" standard "***implies no duty of knowledge on the part of the actor*** whereas 'should know' implies that the actor owes another the duty of ascertaining the fact in question." *Funkhouser*, 736 S.E.2d at 315 n.5 (quoting *Owens-Corning*, 413 S.E.2d at 635 (emphasis added)); *Torkie-Tork v. Wyeth*, 757 F. Supp. 2d 567, 572 (E.D. Va. 2010) (stating that "a failure to warn claim rests on a *reason to know* standard rather than the broader *should have known* standard" (emphasis in original)).

The distinction discussed above is important because the "reason to know" standard means that product manufacturers are not held liable on a negligent-failure-to-warn theory for not taking proactive steps to keep informed of publications in scientific journals or other discoveries regarding potential risks posed by their products.  As the Virginia Supreme Court stated, the following jury instruction imposed an "***inappropriate*** standard" under Virginia law due to the "reason to know" standard: "As an expert, a manufacturer is required to keep informed of the knowledge of experts in its field of manufacturing including scientific knowledge and

---

not have a viable breach-of-implied-warranty claim against Valley Fertilizer.  *See id*. ¶ 18 (quoting Valley Fertilizer Interrogatory Responses).  Again, the Remand Plaintiff does not contend otherwise.

discoveries made in that field." *Owens-Corning*, 413 S.E.2d at 635 (emphasis added).  If a large manufacturer like Owens-Corning is not required to keep informed of scientific knowledge and discoveries in its field of manufacturing, then a local retail seller of Roundup®-branded herbicides (Valley Fertilizer) clearly has no duty under Virginia law to take proactive steps to keep informed of scientific knowledge and discoveries regarding those products.

When Valley Fertilizer sold the Roundup®-branded herbicides that allegedly caused Mr. Coffman's cancer, "Valley Fertilizer did not know, and had no reason to know, of any alleged causal connection between cancer and glyphosate, Roundup®-branded herbicides, or other glyphosate-based herbicides."  Valley Fertilizer Interrogatory Responses (Response to Interrogatory No. 13), ECF No. 1-3.  "[T]he first time that Valley Fertilizer became aware that anyone had even alleged the possibility that the risk of cancer may be increased by exposure to glyphosate, Roundup®-branded herbicides, or any other glyphosate-based herbicides was when Tom Rea, President and General Manager of Valley Fertilizer, learned from news reports in the late summer/fall of 2018 about large verdicts issued by California juries against Monsanto Company in lawsuits by plaintiffs alleging that their cancers were caused by Roundup®-branded herbicides."  *Id.*  "The first such verdict was issued in August 2018, so that is the earliest possible date when Valley Fertilizer became aware of an alleged possible connection between cancer and glyphosate, Roundup®-branded herbicides, or any other glyphosate-based herbicides.  This was after Kevin Coffman allegedly was diagnosed with cancer in April 2018 (according to the Complaint filed in this action)."  *Id.*[6]  Moreover, "Valley Fertilizer had no involvement with – and had no control over – the process of deciding what warnings or other statements would be made on the labels for Roundup®-branded herbicides (or any other herbicide).  Valley Fertilizer has never created, and does not have, its own labels for Roundup®-branded herbicides (or any other herbicide) and has never conferred with the [Environmental Protection Agency ("EPA")] about what should be included on any labels for those herbicides."  Valley Fertilizer Interrogatory Responses (Response to Interrogatory No. 3).  The interrogatory responses

---

[6] Mr. Coffman allegedly was diagnosed with NHL in April 2018.  Compl. ¶ 4.

MONSANTO'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND *COFFMAN* CASE
3:16-md-02741-VC & 3:21-cv-02505-VC

demonstrate that Valley Fertilizer had no reason to know that Roundup®-branded herbicides pose
a cancer risk because "Valley Fertilizer has never received any statements, communications,
notices, or complaints from any of its customers (except for this lawsuit filed by Sue Coffman)
about glyphosate, Roundup®-branded herbicides, or other glyphosate-based herbicides allegedly
causing (or contributing to causing) cancer."  Valley Fertilizer Interrogatory Responses
(Response to Interrogatory No. 21).

 The conclusion that Valley Fertilizer neither knew nor had reason to know that
Roundup®-branded herbicides allegedly cause cancer also follows from Plaintiff's own baseless
allegations that, for decades, Monsanto concealed that glyphosate and Roundup®-branded
herbicides cause cancer – and engaged in other misconduct to mislead farmers and the general
public that these products are safe.  *See, e.g.*, Compl. ¶¶ 27, 30, 50-52, 78-79, 117.  Although
Monsanto denies those allegations, they support the interrogatory responses that Valley Fertilizer
did not know, and had no reason to know, about any alleged causal connection between cancer
and Roundup®-branded herbicides.  Moreover, those interrogatory responses are consistent with,
and bolstered by, important facts: (a) Roundup®-branded, glyphosate-based herbicides repeatedly
have been approved by the EPA – the federal regulatory agency authorized by Congress to
regulate herbicides – with EPA-approved labeling that did not include a cancer warning
throughout the entire period that Mr. Coffman allegedly used these products; (b) these products
currently remain on the market as EPA-approved products without a cancer warning; and (c) as
recently as January 2020, the EPA reiterated its long-standing regulatory and scientific
determination that "'there are no risks to human health from the current registered uses of
glyphosate and that glyphosate is not likely to be carcinogenic to humans,'" Notice of Removal
at 10 n.4 (quoting EPA, Response from the Pesticide Re-evaluation Division (PRD) to
Comments on the Glyphosate Proposed Interim Decision at 4 (attached to Notice of Removal as
Ex. 1), ECF No. 1-1).  When deciding to sell Roundup®-branded herbicides, Valley Fertilizer
reasonably relied on the EPA's regulatory approval of those products and the EPA's scientific
and regulatory determinations that glyphosate and glyphosate-based herbicides (including

Roundup®-branded herbicides) are not carcinogenic and that therefore these herbicides are approved for sale without a cancer warning. *Id*. (citing Valley Fertilizer Interrogatory Responses (Response to Interrogatory No. 1)).

Thus, applying Virginia law to the evidence submitted in the Notice of Removal leads inexorably to the conclusion that Plaintiff does not have a viable negligent-failure-to-warn claim against Valley Fertilizer. When Valley Fertilizer sold the Roundup®-branded herbicides that allegedly caused Mr. Coffman's cancer, Valley Fertilizer did not know – and did not have reason to know – that those products allegedly pose a cancer risk to humans.

Plaintiff has no persuasive response to Monsanto's evidence-based showing that she fraudulently joined Valley Fertilizer, so she: (1) ignores the unusual but important aspect of Virginia law discussed above; and (2) relies on unsupported allegations and speculation. Both strategies fail; there is no persuasive reason for the Court to remand this case.

***First***, as discussed above, Virginia law regarding negligent-failure-to-warn claims requires Plaintiff to meet a higher burden of proof to hold Valley Fertilizer liable in this case than the burden of proof that applies to such claims in many other states. Here, she is required to prove that, when Valley Fertilizer sold the Roundup®-branded herbicides that allegedly caused Mr. Coffman's cancer, Valley Fertilizer had actual knowledge, or ***had reason to know***, that those products create a cancer risk for humans. This "reason to know" standard is more favorable for defendants and imposes a more demanding burden on plaintiffs than the "should know" standard used in many other states. Although there "is a significant legal difference between [those] phrases," *Owens-Corning*, 413 S.E.2d at 634, Plaintiff ignores that difference. Her argument fails to take into account that the "reason to know" standard "***implies no duty of knowledge on the part of the actor*** whereas 'should know' implies that the actor owes another the duty of ascertaining the fact in question." *Funkhouser*, 736 S.E.2d at 315 n.5 (quoting *Owens-Corning*, 413 S.E.2d at 635 (emphasis added)). Plaintiff relies on various publications in scientific journals and the monograph regarding glyphosate issued by the International Agency for Research on Cancer discussed in the Complaint to support her assertion that Valley Fertilizer had

reason to know that Roundup®-branded herbicides and/or glyphosate are possible or probable human carcinogens. *See* Remand Motion at 7. But this conclusory argument is directly contrary to Valley Fertilizer's sworn interrogatory responses and is based on the erroneous legal premise that Valley Fertilizer had an ongoing duty to monitor publications in scientific journals or other scientific developments to assess whether Roundup®-branded herbicides cause cancer. Valley Fertilizer had no such duty under Virginia law. *See supra* pages 5-6 (citing, *inter alia*, *Owens-Corning*, 413 S.E.2d at 635). It did not owe Mr. Coffman (or any other customers) a "duty to ascertain[] the fact in question," *Funkhouser*, 736 S.E.2d at 315 n.5 (quoting *Owens-Corning*, 413 S.E.2d at 635), in this case. Such a duty would be based on a "should know" standard, which is not the standard that applies to Valley Fertilizer here under Virginia law.[7]

**Second**, Plaintiff relies on unsupported allegations and speculation that Valley Fertilizer may have actually known, or may have had reason to know, that Roundup®-branded herbicides cause cancer, *see* Remand Motion at 7, but those arguments lack merit. When a removing defendant pierces the pleadings with evidence showing that a non-diverse defendant has been fraudulently joined – as Monsanto did in the Notice of Removal – a plaintiff seeking remand cannot rely on mere allegations or speculation lacking evidentiary support. *See, e.g.*, *Arias*, 2019

---

[7] Plaintiff claims that the Valley Fertilizer Interrogatory Responses address only lack of actual knowledge and not whether Valley Fertilizer had reason to know that Roundup®-branded herbicides cause cancer, *see* Remand Motion at 8, but that argument misses the mark. Valley Fertilizer has stated under oath that, when it sold Roundup®-branded herbicides to Mr. Coffman, "Valley Fertilizer did not know, *and had no reason to know*, of any alleged causal connection between cancer and glyphosate, Roundup®-branded herbicides, or other glyphosate-based herbicides." Valley Fertilizer Interrogatory Responses (Response to Interrogatory No. 13) (emphasis added). The interrogatory responses expand upon that statement by explaining how and when Valley Fertilizer first had reason to know that anyone had alleged the possibility that Roundup®-branded herbicides may increase the risk of cancer: "[T]he first time that Valley Fertilizer became aware that anyone had even alleged the possibility that the risk of cancer may be increased by exposure to glyphosate, Roundup®-branded herbicides, or any other glyphosate-based herbicides was when Tom Rea, President and General Manager of Valley Fertilizer, learned from news reports in the late summer/fall of 2018 about large verdicts issued by California juries against Monsanto Company in lawsuits by plaintiffs alleging that their cancers were caused by Roundup®-branded herbicides." *Id*. Valley Fertilizer also had no information from any of its customers that would have given it reason to know about any alleged cancer risk created by Roundup®-branded herbicides: "Valley Fertilizer has never received any statements, communications, notices, or complaints from any of its customers (except for this lawsuit filed by Sue Coffman) about glyphosate, Roundup®-branded herbicides, or other glyphosate-based herbicides allegedly causing (or contributing to causing) cancer." Valley Fertilizer Interrogatory Responses (Response to Interrogatory No. 21).

WL 484192, at *3 (denying remand motion; plaintiff did not state a claim against the non-diverse

defendant because "even assuming [p]laintiff's legal theories are viable, [p]laintiff has offered *no*

*facts* to support these claims" and "submit[ted] no evidence to dispute [d]efendants' version of

the facts" that established fraudulent joinder (emphasis in original)); *Feizbakhsh*, 2016 WL

8732296, at *8 (same; plaintiff's "conclusory allegations" were not sufficient to overcome the

evidence offered by removing defendant to establish fraudulent joinder); *Martinez*, 2016 WL

5930271, at *3 (same; plaintiff's "speculation, which is unsupported by any evidence[,]" did not

suffice to overcome evidence presented by removing defendant); *Vu*, 602 F. Supp. 2d at 1155

(same; accepting removing defendant's fraudulent joinder showing because plaintiffs did not

contest the in-forum defendant's declaration "that she did not market or distribute" the products

at issue in the lawsuit).  Thus, Plaintiff's allegations and speculation – which lack evidentiary

support and are contrary to the evidence submitted in the Notice of Removal – fail to support

Plaintiff's remand argument.[8]

## II.   The Notice Of Removal Was Timely Based On Section 1446(b) Because The Valley Fertilizer Interrogatory Responses Were The "Other Paper" That First Made This Lawsuit Removable.

As discussed above, Section 1446(b) provides two thirty-day periods within which a

defendant can file a timely removal notice.  The first period requires the defendant to remove a

case within thirty days of service of process, if "the case stated by the initial pleading is

removable on its face."  *Carvalho*, 629 F.3d at 885 (quotation marks omitted).  However, if the

---

[8] Plaintiff's effort to conjure up a remand argument based on "the silence of Costco," Remand Motion at 8, or the fact that Costco did not file a demurrer, *id.* at 9, is unavailing.  It is undisputed that Costco does not destroy diversity of citizenship or otherwise block removal.  *See supra* note 2.  Thus, the Notice of Removal did not need to address whether Plaintiff has any viable claims against Costco.  The issue here is whether she has any viable claims against Valley Fertilizer; the evidence presented in the Notice of Removal establishes that she does not. Plaintiff cannot rebut Monsanto's evidence-based showing that she fraudulently joined **Valley Fertilizer** by speculating about why **Costco** – a defendant that is not similarly situated to Valley Fertilizer in this case – filed an answer instead of a demurrer.  Whether Costco knew or had reason to know that Roundup®-branded herbicides allegedly can cause cancer (and, if so, when Costco knew or had reason to know) does not shed any light on whether Valley Fertilizer knew or had reason to know that Roundup®-branded herbicides allegedly can cause cancer (and, if so, when it knew or had reason to know).  Likewise, Plaintiff's argument about Valley Fertilizer's pre-removal venue transfer motion, *see* Remand Motion at 10, is irrelevant.  Valley Fertilizer's request for a change of venue (to another Virginia court) has no bearing on the issue now before this Court – whether Plaintiff fraudulently joined Valley Fertilizer.

case stated by the initial pleading is *not* removable on its face, the removal statute gives a defendant a second thirty-day period to file a timely removal notice, if the removing defendant receives an "other paper" from which removability may first be ascertained.  *Id*. (quoting § 1446(b)); *see Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (same).

That is what happened here; Monsanto complied with Section 1446(b) by timely filing the Notice of Removal within the second thirty-day period.  It is undisputed that the claims asserted in the Complaint against Valley Fertilizer meant that "the case stated by the initial pleading," *Carvalho*, 629 F.3d at 885, was not removable.  The Valley Fertilizer Interrogatory Responses discussed above were the "other paper from which it may first be ascertained that [this] case is one which is or has become removable."  § 1446(b)(3).  It is undisputed that Monsanto filed the Notice of Removal within thirty days of the date when Valley Fertilizer served those interrogatory responses, so that filing was timely under Section 1446(b)(3).

Although Plaintiff seizes on the Demurrer (filed in January 2021) to claim that the Notice of Removal (filed March 17, 2021) was untimely based on Section 1446(b), *see* Remand Motion at 5-6, that argument lacks merit because the Demurrer did not start the clock running on the second thirty-day removal period in Section 1446(b).  The Demurrer was a bare-bones filing that set forth *solely unsworn arguments by counsel* – not the *evidence* required for Monsanto to pierce the pleadings and present fraudulent joinder removal arguments.  There are two kinds of fraudulent joinder arguments:  (1) a facial challenge to a claim asserted in a complaint (and an argument that, as a matter of law, the plaintiff does not have a viable claim against a fraudulently joined defendant); and (2) an evidence-based challenge that, as discussed above, *see supra* page 3, pierces the pleadings (and shows that the plaintiff does not have a viable claim against a fraudulently joined defendant).  The Notice of Removal made both kinds of arguments, directed at different claims in the Complaint.  *Compare* Notice of Removal ¶ 15 (showing without evidence that Plaintiff's strict liability claims against Valley Fertilizer fail as a matter of Virginia law) *with id*. ¶¶ 16-18 (presenting evidence – *i.e.*, the Valley Fertilizer Interrogatory Responses – to show that Plaintiff's other claims against Valley Fertilizer are not viable under Virginia law).

Although Monsanto did not need evidence to challenge Plaintiff's strict liability claims (they fail as a matter of Virginia law; Plaintiff does not contend otherwise), Monsanto could not show that Plaintiff's other claims against Valley Fertilizer are not viable until Monsanto had evidence to pierce the pleadings.  Of course, a removal notice cannot be filed until the removing defendant can establish that ***all*** claims asserted against the fraudulently joined defendant are not viable within the meaning of the fraudulent joinder standard discussed above.  And, of course, the arguments made by Valley Fertilizer's counsel in the Demurrer are not evidence.[9]

At best, after Valley Fertilizer filed the Demurrer, Monsanto was faced with unsworn attorney arguments in the Demurrer based on potential inferences from unsworn allegations in the Complaint – but Monsanto had no evidence to pierce the pleadings to support an "other paper" removal at that time.  Given such an equivocal, uncertain record and the demanding burden imposed on defendants asserting fraudulent joinder removal arguments, Monsanto had no basis to file a removal notice at that time.  To start the clock on the second thirty-day period in Section 1446(b), the information contained in the "other paper" must be "unequivocally clear and certain in support of removability."  *Barakat v. Costco Wholesale Corp.*, No. 20-cv-02248-JCS, 2020 WL 3635933, at *4 (N.D. Cal. July 6, 2020) (quotation marks omitted) (denying remand motion and rejecting Section 1446(b) untimeliness argument); *see Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1089-90 (C.D. Cal. 2005) (same; stating that second thirty-day period in Section 1446(b) "is triggered only when the information supporting removal is unequivocally clear and certain" (quotation marks omitted)), *aff'd on other grounds*, 446 F.3d 1011 (9th Cir. 2006); *Highwire Promotions, LLC v. Legends Mktg., LLC*, No. CV 05-5425 ABC (FMOx), 2005 WL 8156562, at *3 (C.D. Cal. Oct. 31, 2005) (same; holding that supplemental document

_____

[9] Valley Fertilizer's counsel made the following conclusory arguments in the Demurrer, but none of them were supported by any evidence:  "The Complaint does not allege nor could it allege that defendant Valley [Fertilizer] had knowledge, actual or constructive, of the allegedly dangerous effects of Roundup.  The Complaint does not allege no[r] could it allege that Valley [Fertilizer] was ever notified that it breached any warranties with respect to Roundup.  Since the Complaint does not allege nor could it allege that Valley [Fertilizer] was aware or should have been aware of the dangerous condition of Roundup or that Valley [Fertilizer] was ever notified that it breached a warranty with respect to Roundup, the Complaint fails to state a cause of action for negligence or breach of implied warranties against Valley [Fertilizer] and should be dismissed."  Demurrer at 3.

MONSANTO'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND *COFFMAN* CASE
3:16-md-02741-VC & 3:21-cv-02505-VC

production did not start second thirty-day clock running under Section 1446(b) because those documents did not give defendants "clear and unequivocal notice" that the case had become removable.  If Monsanto had filed a removal notice based on unsworn attorney arguments in the Demurrer, Plaintiff would have argued that remand was required because Monsanto lacked any evidence to support its fraudulent joinder arguments.  After waiting to file an evidence-based removal notice, Monsanto now faces her unwarranted criticism that it waited too long.

If the "heads I win tails you lose" untimeliness argument that Plaintiff makes here is accepted by this Court, that ruling would encourage defendants to file premature removal notices to protect themselves against arguments that they waited too long to file those removal notices.  But premature, protective removal notices are precisely what the Ninth Circuit has admonished should *not* be filed.  The Ninth Circuit expressed its "concern that defendants may be encouraged to engage in premature removals in order to ensure that they do not waive their right to removal" and stated that "the pressure to file a premature notice of removal may lead to the imposition of Rule 11 sanctions."  *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 697 (9th Cir. 2005).  The court also explained that, '[b]y assuring that removal occurs once the jurisdictional facts supporting removal are evident, we also ensure respect for the jurisdiction of state courts."  *Id*. at 698; *see id*. (expressing interest in avoiding "premature and protective removals and minimiz[ing] the potential for a cottage industry of removal litigation"); *Durham*, 445 F.3d at 1251 (discussing possibility of Rule 11 sanctions for filing "a baseless notice of removal" and stating that, "[a]fter *Harris*, we no longer require defendants to take this blind leap—we don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove"); *Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co.*, 844 F.3d 1133, 1142 (9th Cir. 2017) (stating that "a defendant is not put to the impossible choice of subjecting itself to fees and sanctions by filing a premature (and baseless) notice of removal or losing its right to remove the case by waiting too long" (citing *Durham*, 445 F.3d at 1251)).[10]

---

[10] Plaintiff's reliance on the *Brittain* case is misplaced.  *See* Remand Motion at 6 (quoting *Brittain v. Pac. Cycle, Inc.*, No. 5:17-cv-00148-RJC-DCK, 2018 WL 6584482 (W.D.N.C. Dec. 14, 2018)).  The North Carolina district court judge's ruling that the removal notice was filed too late does not address the need to avoid encouraging premature, protective removals – as

If it is accepted, Plaintiff's untimeliness argument would impose on Monsanto exactly the "impossible choice" that the Ninth Circuit rejected in *Chan Healthcare*. Instead of prematurely filing a baseless protective removal notice based on unsworn arguments made by Valley Fertilizer's counsel in the Demurrer, Monsanto waited to remove this case until it had evidence – the Valley Fertilizer Interrogatory Responses – needed to pierce the pleadings and present well-founded fraudulent joinder arguments. That was the right choice. It was proper based on the Section 1446(b) "other paper" provision and Ninth Circuit law, so Plaintiff has no persuasive basis to contend that Monsanto's Notice of Removal was untimely.[11]

---

discussed in the Ninth Circuit rulings cited above. Ninth Circuit precedent governs here, not an order issued by a district court in the Fourth Circuit. *See supra* note 4. The *Brittain* order also does not account for the distinction between making a facial challenge to a plaintiff's claim in a removal notice without presenting evidence in support of the fraudulent joinder argument and making a fraudulent joinder argument based on evidence that pierces the pleadings. *Brittain* is neither binding nor persuasive authority here, so this Court should not rely on that order. Plaintiff also relies on this Court's remand ruling in other Roundup lawsuits, *see* Remand Motion at 5 (quoting *In re Roundup Prods. Liab. Litig. (Abreu, et al.)*, 396 F. Supp. 3d 893, 897 (N.D. Cal. 2019)), but that ruling is inapposite because it involved multi-plaintiff cases that Monsanto removed in a materially different procedural posture than this single-plaintiff case. Unlike this removal – which is based on important evidence disclosed for the first time in the Valley Fertilizer Interrogatory Responses that made this case removable based on the Section 1446(b) "other paper" provision – Monsanto removed those multi-plaintiff cases based on a different argument: that a severance order issued by a California state court judge triggered removability under Section 1446(b). In those cases, unlike in this case, Monsanto already had prior information (from admissions in various complaints or Plaintiff's Fact Sheets) that certain plaintiffs were alleging solely residential use of Roundup®-branded herbicides. However, those plaintiffs were joined with other plaintiffs who did not allege solely residential use and therefore their claims were not removable on fraudulent joinder grounds. Thus, the residential users' claims could not be removed absent a severance order. The state court's severance order had not gone into effect by the time Monsanto filed those removal notices, and this Court declined to implement that severance order. That decision led the Court to remand those lawsuits. The Court held that Monsanto's removal notices were filed too soon, *see Roundup Prods. Liab. Litig.*, 396 F. Supp. 3d at 897 ("For Monsanto's plan to work, the cases would first need to be severed."), not that they were filed too late, so that remand ruling also does not support Plaintiff's untimeliness argument.

[11] Plaintiff also misses the mark by arguing that "[n]othing prevented Monsanto from inquiring of Valley [Fertilizer] earlier" based on the information stated in Demurrer and "noticing a removal by February 11, 2021," Remand Motion at 6. This argument is based on the assumption that Monsanto was required to make such an inquiry to avoid an untimeliness argument based on Section 1446(b). Not so. *See, e.g., Barakat*, 2020 WL 3635933, at *4 (denying remand motion and rejecting plaintiff's Section 1446(b) argument that defendant's removal notice was untimely; stating that "courts in the Ninth Circuit generally do not require even the simplest of inquiries on behalf of a defendant" (quotation marks omitted)); *White v. Raley's*, No. 3:20-cv-00457-MMD-WGC, 2020 WL 8474573, at *3 (D. Nev. Oct. 19, 2020) (same; stating that defendant was not required to "make further inquiry" (quoting *Harris*, 425 F.3d at 694)).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Remand Motion.[12]

DATED:  April 30, 2021

Respectfully submitted,

/s/ Eric G. Lasker

William Hoffman (*pro hac vice*)
(william.hoffman@arnoldporter.com)
Daniel S. Pariser (*pro hac vice*)
(daniel.pariser@arnoldporter.com)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel:  202-942-5000
Fax:  202-942-5999

Eric G. Lasker (*pro hac vice*)
(elasker@hollingsworthllp.com)
Martin C. Calhoun (*pro hac vice*)
(mcalhoun@hollingsworthllp.com
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, DC 20005
Tel:  202-898-5800
Fax:  202-682-1639

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonstekloff.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonstekloff.com)
WILKINSON STEKLOFF LLP
2001 M Street, NW, 10th Floor
Washington, DC 20036
Tel:  202-847-4030
Fax:  202-847-4005

*Attorneys for Defendant Monsanto Company*

---

[12] If the Court decides to remand this case, the Court should deny Plaintiff's request for fees and costs because, as shown above, Monsanto had an objectively reasonable basis for removing this case to this Court.  *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) ("[W]hen an objectively reasonable basis exists [for seeking removal], fees should be denied.").